IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

ELSIE GILFORD,                         :
                                       :
        Plaintiff,                     :
                                       :
vs.                                    :
                                       :        CIVIL ACTION 16-290-M
CAROLYN W. COLVIN,                     :
Social Security Commissioner,          :
                                       :
        Defendant.                     :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling denying claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 13). The parties filed written consent and this action was referred to the undersigned Magistrate Judge to conduct all proceedings and order judgment in accordance with 28 U.S.C. § 636(c), Fed.R.Civ.P. 73, and S.D.Ala. Gen.L.R. 73(b) (*see* Doc. 18). Oral argument was waived in this action (Doc. 19).  After considering the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** for further action not inconsistent with the Orders of this Court.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was thirty-three years old, had completed some college education (Tr. 61), and had previous work experience as a companion, nurse's aide, and a waitress (Tr. 70).  Gilford alleges disability due to Erb's palsy and resulting loss of the use of her right arm, asthma, obesity, and arm and hand pain (Doc. 12).

Plaintiff applied for disability benefits and SSI on May 22, 2013, asserting an onset date of December 11, 2012 (Tr. 41, 146-72).  An Administrative Law Judge (ALJ) denied benefits, determining that Gilford was capable of performing her past work as a companion (Tr. 41-50).  Plaintiff requested review of the hearing decision (Tr. 34-37), but the Appeals Council denied it (Tr. 1-6).

Plaintiff claims that the opinion of the ALJ is not

supported by substantial evidence.  Specifically, Gilford
alleges that:  (1) The ALJ did not properly consider the
opinions of the doctors; (2) the ALJ did not weigh all of the
evidence; and (3) the ALJ improperly discredited her pain
testimony (Doc. 13).  Defendant has responded to—and denies—
these claims (Doc. 14).  The Court's summary of the relevant
record evidence follows.[1]

On May 16, 2013, Dr. Roseanne Cook examined Gilford for
cold symptoms, anxiety, and obesity (Tr. 345-49, 355).  The
Doctor noted that Plaintiff's Body Mass Index was 48.91,
characterized as extremely obese.[2]  On June 20, Gilford
complained of right shoulder pain, radiating to the hand, with a
severity level of ten, occurring intermittently and getting
worse; the pain was sharp and throbbing and aggravated by
lifting (Tr. 341-44).  Tenderness and moderate pain with motion
were noted; Gilford was encouraged to start exercise therapy and
to limit her fat when eating.

On June 21, Gilford went to the J. Paul Jones Hospital
Emergency Room for worsening pain in her right arm, radiating
into her hand, with numbness; she had decreased motor strength,
though sensation was grossly intact (Tr. 327-31).  Plaintiff was

---

[1]The Court will not review evidence that pre-dates Plaintiff's
asserted date of disability by more than a year or that is not
relevant to the claims herein.

[2]*See* https://www.marinahospital.com/weight-loss/bmi/48

treated with Toradol[3] and given prescriptions for Mobic[4] and Lortab[5] and discharged in good condition.

On July 25, 2013, Dr. Celtin Robertson, Internist, examined Gilford for right arm paralysis from birth and pain rated as ten on a ten-point scale; Plaintiff reported needing help dressing herself (Tr. 304-08).  Gilford could walk without assistance, get on and off the exam table, and squat and rise.  Robertson performed range of motion (hereinafter *ROM*) tests and recorded no movement in the right shoulder joint, elbow, forearm, wrist, and fingers; he noted tenderness to palpation over the right upper extremity, triggering a 10/10 sharp sensation.  The right arm was seventy percent as large as the left arm because of atrophy; spasticity, hypertonia, and contracture were also present.  Motor strength was 1/5 in the right arm, though full in the other extremities. Gilford could grip, hold, grasp, and manipulate objects on the left, her dominant hand, but not on the right; there was tenderness and spasticity, but no sensation, in the right hand.  Robertson diagnosed Plaintiff to have injury to the brachial plexus, but found that Gilford could

---

[3]*Toradol* is prescribed for short term (five days or less) management of moderately severe acute pain that requires analgesia at the opioid level. *Physician's Desk Reference* 2507-10 (52nd ed. 1998).

[4]**Error! Main Document Only.***Mobic* is a nonsteroidal anti-inflammatory drug used for the relief of signs and symptoms of osteoarthritis and rheumatoid arthritis.  *Physician's Desk Reference* 855-57 (62nd ed. 2008).

[5]*Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

engage in maximum standing, walking, and sitting; at most, she could lift ten pounds occasionally.  Plaintiff could never reach, handle objects, finger objects, or feel objects with the right arm and hand.

On October 14, 2013, Dr. Willie E. White examined Gilford for pain and numbness in her right arm; the right arm and hand were in a splint (Tr. 311).  Plaintiff was prescribed Flexeril[6] and referred to another doctor.

On November 3, Dr. Cook saw Plaintiff for a rash and constant, moderately severe, right shoulder pain, radiating into her hand; the pain, rated as six at that time, was aggravated by lifting and pushing, but relieved by medications (Tr. 338-40). Diet and exercise were encouraged.

On November 14, Neurologist Dr. Walid W. Freij examined Plaintiff, finding her alert and oriented in four spheres; he noted weakness in the right upper extremity with no movement in the fingers (Tr. 365-66).  The fingers were in flexion; she could not flex at the biceps or extend at the triceps.  Tone was decreased, and reflexes were markedly decreased, in that extremity; there was no pinprick or light touch sensation in the arm all the way up to the shoulder.  Freij's assessment was that her pain was caused because her arm hung by her side, without

---

[6]**Error! Main Document Only.**Flexeril is used along with "rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions."  *Physician's Desk Reference* 1455-57 (48th ed. 1994).

movement; he gave her a sling and prescribed Neurontin.[7]

On November 20, 2013, Gilford returned to the Emergency Room for right arm pain and numbness in the fingers on that hand; she had not taken her Neurontin in several days (Tr. 321-25). Plaintiff was unable to extend her fingers either actively or passively in her right hand. She was treated with Toradol, Valium,[8] and Percocet[9] while Lortab was prescribed; Gilford was instructed to take her medications as prescribed.

On November 26, Neurologist Freij administered nerve conduction studies and an EMG that confirmed that Plaintiff had Erb's palsy and produced evidence of mild right carpal tunnel syndrome and mild right sensory ulnar neuropathy (Tr. 367-70).

On December 5, Plaintiff returned to the ER for right extremity pain; muscle spasm, neuropathy, and pain were noted (Tr. 314-20). She was treated with Morphine, Valium, Toradol and given prescriptions for OxyContin[10] and Soma.[11]

---

[7] *Neurontin* is used in the treatment of partial seizures and nerve pain. *Physician's Desk Reference* 2110-13 (52nd ed. 1998).

[8] **Error! Main Document Only.***Diazepam*, better known as Valium, is a class IV narcotic is used for treatment of anxiety. *Physician's Desk Reference* 2765-66 (62nd ed. 2008).

[9] *Percocet* is used for the relief of moderate to moderately severe pain. **Error! Main Document Only.***Physician's Desk Reference* 1125-28 (62nd ed. 2008).

[10] **Error! Main Document Only.**"*OxyContin* tablets are a controlled-release oral formulation of oxycodone hydrochloride indicated for the management of moderate to severe pain where use of an opioid analgesic is appropriate for more than a few days." *Physician's Desk Reference* 2344-46 (52nd ed. 1998).

[11] **Error! Main Document Only.***Soma* is a muscle relaxer used "for the relief of discomfort associated with acute, painful musculoskeletal conditions," the effects of which last four-to-six hours. *Physician's*

On December 6, 2013, Dr. Cook noted that Gilford complained of sharp, severe right shoulder pain, radiating into her fingers, aggravated by bending, lifting, and movement (Tr. 335-37).  ROM was noted to be severely reduced in the shoulder; Ultram[12] was added to the medication regimen.

On February 13, 2014, Dr. Freij noted that Gilford was unable to lift things with her right arm; he increased her Neurontin and added Baclofen[13] to her prescriptions (Tr. 364). On April 16, 2014, Plaintiff said that her arm still hurt; Dr. Freij noted that she was able to move the arm, but the fingers were weak (Tr. 363).  On August 15, 2014, Dr. Freij examined Gilford for complaints that she was beginning to experience numbness, tingling, and pain on her left side, though not in those extremities; medications were helping her pain with the level rated as six-to-seven (Tr. 379-80).  The Neurologist noted right upper extremity weakness and that her hand was fisted; he told Plaintiff to avoid repetitive wrist motions and to wear wrist braces.  On August 29, Freij conducted nerve conduction studies and an EMG and found evidence of mild right carpal tunnel syndrome affecting sensory components, mild left carpal tunnel syndrome affecting sensory and motor components without

---

*Desk Reference* 2968 (52nd ed. 1998).

[12]**Error! Main Document Only.***Ultram* is an analgesic "indicated for the management of moderate to moderately severe pain."  *Physician's Desk Reference* 2218 (54th ed. 2000).

[13]Baclofen is a muscle relaxer used in treating muscle symptoms caused by multiple sclerosis, including spasm, pain, and stiffness. *See* http://www.drugs.com/baclofen.html

evidence of denervation, and evidence of right Erb's palsy (Tr. 375-78).

On September 10, 2014, Dr. Cook noted that Gilford's cervical spine was tender and that there was mild pain with motion; the right shoulder was paralyzed with severely restricted ROM (Tr. 383-87).  The right elbow had severely reduced ROM while the hand exhibited moderate pain with motion. The balance of the exam was normal.  Plaintiff was counseled as to diet and nutrition.  On that same date, Dr. Cook completed a physical medical source statement indicating that Gilford was capable of sitting five-to-six hours and standing or walking four-to-five hours during an eight hour day; she could lift and/or carry five pounds occasionally and one pound frequently (Tr. 372).  The Doctor indicated that Plaintiff should avoid dust, fumes, gasses, and extreme temperature, humidity, and other environmental pollutants.  Gilford was capable of gross manipulation, fine manipulation, and bending and/or stooping occasionally, climbing, balancing, reaching, operating motor vehicles, and working around hazardous machinery rarely, but could never use arm controls.  Cook thought that Plaintiff would miss work, because of her impairments, three days a month.  Dr. Cook also completed a pain questionnaire indicating that Gilford's pain distracted her from adequately performing her daily activities, that physical activity would increase her

pain, but would not prevent adequate functioning of those tasks, and that her medications would cause some side effects, but that they would be only mildly troublesome (Tr. 373).  The Doctor indicated that Gilford's medical condition could be expected to cause her pain and that the pain would prevent her from maintaining attention, concentration, or pace for periods of at least two hours.

This concludes the Court's summary of the evidence.

Gilford brings this action, first claiming that the ALJ did not properly consider the opinions of the doctors (Doc. 13, pp. 6-10).  Specifically, Plaintiff questions the ALJ's weighing the evidence provided by Drs. Cook and Robertson.

The Court notes that the ALJ is required to "state specifically the weight accorded to each item of evidence and why he reached that decision." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).  Furthermore, social security regulations provide the following instruction:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the

> individual and to any subsequent reviewers
> the weight the adjudicator gave to the
> individual's statements and the reasons for
> that weight.

SSR 96-7p (Policy Interpretation Ruling Titles II and XVI:
Evaluation of Symptoms in Disability Claims:  Assessing the
Credibility of an Individual's Statements).  Furthermore, a
treating physician's opinion "must be given substantial or
considerable weight unless 'good cause' is shown to the
contrary," existing when the:  (1) treating physician's opinion
was not bolstered by the evidence; (2) evidence supported a
contrary finding; or (3) treating physician's opinion was
conclusory or inconsistent with the doctor's own medical
records.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.
2004)(*quoting Lewis v. Callahan*, 125 F.2d 1436, 1440 (11th Cir.
1997)).

In determining that Robertson's conclusions were entitled
to only "some weight," the ALJ noted that although his opinions
were consistent with his findings, they were inconsistent with
the objective medical evidence that showed "only intermittent
complaints of pain, the claimant's own report of her daily
activities, or with her work history" (Tr. 46).  The ALJ found
her physical capabilities were greater than the limitations
suggested by Robertson.

Likewise, the ALJ gave Dr. Cook's opinions only "some

weight" (Tr. 48).  His first reason was that there was no evidence that Gilford had any difficulties with her lower extremities, rejecting Cook's assessment that limited Gilford's sitting, standing, and walking abilities.  The ALJ went on to find that the Doctor's pain evaluation was inconsistent with Plaintiff's own report of her daily activities and work history.

In his determination, the ALJ pointed to work Plaintiff had performed at Waffle House in 2008 as indicating that she could still work (Tr. 48; *cf.* Tr. 204); that job pre-dated Gilford's onset date by four years.  The ALJ also cited Gilford's ability to make sandwiches at McDonald's; again, that job pre-dated her onset date (Tr. 48; *cf.* Tr. 63).  The Court finds that the ALJ's work history discussion indicates a failure to consider Gilford's  medical condition during the time period she alleges disability.

The Court further finds that this error carried over into the ALJ's evaluation of the medical evidence.  The ALJ minimized the value of Dr. Cook's opinions because of Gilford's "own report of her daily activities and [] her work history" (Tr. 48).  The ALJ rejected Robertson's opinion, though "somewhat consistent with his findings," because of "the claimant's own report of her daily activities [and] her work history" (Tr. 46). Doctor Robertson's report of Gilford's daily activities noted her need for assistance in dressing herself and watching

television (Tr. 304-05).  By concluding that Plaintiff could perform light[14] work, the ALJ rejected, without explanation, Robertson's finding that she could only occasionally lift up to ten pounds and Cook's finding that she could lift only five pounds (Tr. 44-45; *cf.* 308, 372).

The Court finds that the ALJ's reasons for rejecting the opinions of Drs. Cook and Robertson are not supported by substantial evidence.[15]  Furthermore, the Court notes that although the ALJ reported Dr. Freij's findings (Tr. 46-47), he gave no indication of the weight he gave those reports.  This is significant in light of the Neurologist's last examination in which he found Gilmore's right hand "fisted" and he ordered her to wear braces on both wrists for her carpal tunnel syndrome (Tr. 379-80).

Based on review of the entire record, the Court finds that the Commissioner's decision is not supported by substantial evidence.  Therefore, it is **ORDERED** that the action be **REVERSED** and **REMANDED** to the Social Security Administration for further

---

[14]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b).

[15]Because of the Court's ruling on the first claim, it is unnecessary to reach the merits of the second and third claims.

administrative proceedings consistent with this opinion, to include, at a minimum, a supplemental hearing for the gathering of evidence regarding Plaintiff's work history and her ability to work.  Judgment will be entered by separate Order.

DONE this 21st day of December, 2016.


                                        s/BERT W. MILLING, JR.
                                        UNITED STATES MAGISTRATE JUDGE